UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

HIGHLANDS NURSING AND                                              Plaintiff
REHABILITATION, LLC, ET AL.


v.                                               Civil Action No. 3:25-cv-383-RGJ


MARY MINOR ROWAN, AS                                              Defendant
ADMINISTRATRIX OF THE ESTATE OF
JOANN A. MAY, DECEASED

* * * * *

**MEMORANDUM OPINION & ORDER**

Defendant Mary Minor Rowan ("Rowan"), as Administratrix of the Estate of her sister, JoAnn A. May ("May"), moves to dismiss Plaintiffs Highlands Nursing and Rehabilitation, LLC and Highlands Nursing and Rehabilitation Holdings, LLC's (collectively, "Highlands Nursing") complaint for failure to state a claim. [DE 6]. Highlands Nursing responded [DE 7], and Rowan replied [DE 8]. Briefing is complete and the matter is ripe. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Rowan's motion to dismiss. [DE 6].

## I.    BACKGROUND

On July 14, 2019, May attempted to execute a Power of Attorney ("POA") appointing her sister, Rowan, as her attorney-in-fact. [DE 1-3]. Under the terms of the purported POA, Rowan was given "full power and authority to act on [May's] behalf," including the power to:

7. Take any and all legal steps necessary to collect any amount or debt owed to [May], or to settle any claim, whether made against [May] or asserted on [May's] behalf against any other person or entity.

8. Enter into binding contracts on [May's] behalf.

1

[DE 1-3 at 42]. On September 29, 2023, May became a resident at the Highlands Nursing and Rehabilitation nursing home ("nursing home"). [DE 6-1 at 63]. Upon May's admission into the nursing home, Rowan signed an arbitration agreement presented by Highlands Nursing, which provided, in relevant part:

> Highlands Nursing and Rehabilitation, LLC (hereinafter the "Facility" as defined below) and Joann May (hereinafter the "Resident" as defined below) agree that any legal dispute, controversy, demand or claim (hereinafter collectively referred to as "claim" or "claims") arising out of, or relating in any way to Resident's admission to Facility, including prior stays at the Facility, or any service, diagnosis, or care of the Resident provided by Facility including the applicability of this Arbitration Agreement and the validity thereof, shall be resolved exclusively by binding arbitration. . . . In using arbitration, the disputes area heard and decided by a private individual called an arbitrator. **THE DISPUTE WILL NOT HEARD OR DECIDED BY A JUDGE OR JURY**. *Neither the resident nor his or her representative is required to sign an agreement for binding arbitration as a condition of admission to, or as a requirement to continue to receive care at the facility.*
> . . .
>
> **V. Claims to be Arbitrated**
>
> The parties agree that this Arbitration Agreement and any proceedings applicable thereto, are to be governed by and interpreted under the Federal Arbitration Act. 9 U.S.C. § 1-16. . . . This agreement to arbitrate includes, but is not limited to, . . . claims of breach of contract (except collections of unpaid monies owed for services provided or rendered,, fraud or misrepresentation, negligence, gross negligence, malpractice, or any other claim based on any departure from accepted standards of medical, nursing, health care or safety, whether sounding in tort, contract, consumer trade practices, product liability or any other cause of action not herein named, but that could be brought under applicable state or federal civil laws. . . .

[DE 1-1 at 9–10 (emphasis in original)]. May was a resident at the nursing home until November 3, 2023, and she died on December 14, 2023. [DE 1-2 at 15; DE 7-2]. Rowan claims that, during May's time in the facility, she "suffered woefully substandard care, resulting in falls, malnutrition, urinary tract infection, pressure wound, and death." [DE 6-1 at 64]. Pursuant to these allegations, Rowan filed suit against Highlands Nursing in the Jefferson Circuit Court on March 10, 2025,

2

asserting claims for negligence, medical negligence, corporate negligence, and wrongful death. [DE 1-2].

On June 23, 2025, Highlands Nursing filed suit against Rowan in this Court seeking (1) to compel arbitration in the state court action, as provided in the arbitration agreement, and (2) to enjoin Rowan from further pursuing the state court action. [DE 1 at 6]. Rowan now moves to dismiss the complaint.

## II.     STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard does not "impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Dismissal under Rule 12(b)(6) is warranted "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008).

Because a motion to dismiss challenges the sufficiency of the pleadings, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence." *Miller v. Currie*, 50 F.3d

3

373, 377 (6th Cir. 1995). Rather, to determine whether the plaintiff set forth a "plausible" claim, the Court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombl*y, 550 U.S. at 555). In deciding a motion to dismiss, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

### III.    DISCUSSION

Rowan argues, first, that the complaint must be dismissed because the POA authorizing Rowan to act on May's behalf was invalid under Kentucky law, and thus Rowan lacked authority to enter into a binding arbitration agreement. [DE 6-1 at 66]. She therefore argues that the arbitration agreement is invalid and unenforceable. [*Id.*]. Next, she contends that even if the arbitration agreement is found to be valid, it is inapplicable to Rowan's state court wrongful death claim because Kentucky law precludes a decedent from binding beneficiaries to arbitrate their wrongful death claims. [*Id.* at 70]. Finally, she argues that the arbitration agreement, if found valid, nonetheless "excludes the types of claims at issue in this case." [*Id.* at 71].

A. Validity of POA

Highlands Nursing asks the Court to compel arbitration of Rowan's claims in the state court action. Because the validity and enforceability of the arbitration agreement is contingent on

4

Rowan's authority under the POA to enter into such an agreement, the Court first considers whether the POA itself was valid under Kentucky law. If the POA was invalid, then the arbitration agreement was likewise invalid and Highlands Nursing's attempt to enforce it must fail.

Rowan argues that the POA was invalid because it failed to comply with KRS 457.050(2), which at the time required that "[a] power of attorney [] be signed in the presence of two (2) disinterested witnesses by the principal . . . ."  [DE 6-1 at 66–67]. She maintains that the POA failed to comply with this requirement because it was not signed by two disinterested witnesses. [*Id.*]. She also points out that the 2020 amendment to KRS 457.050, which eliminated the disinterested witness requirement, was found not to apply retroactively by the Kentucky Supreme Court in *Wiley v. Masonic Homes*, 694 S.W.3d 322 (Ky. 2024). [*Id.* at 68]. In response, Highlands Nursing argues that May did sign the POA in the presence of two disinterested witnesses—the notary and the attorney who prepared the POA—and that KRS 457.050(2) had no requirement that the witnesses *sign* the POA. [DE 7 at 88]. Highlands Nursing also argues that the Court should not follow *Wiley*'s holding as to the retroactivity of the 2020 amendment to KRS 457.050 because the facts of that case are distinguishable from this one. [*Id.* at 90–91].

In 2018, the Kentucky legislature "enacted the first comprehensive set of laws related to powers of attorney in KRS Chapter 457, also known as the Uniform Power of Attorney Act (2006), including KRS 457.050," *Wiley*, 694 S.W.3d at 325. The 2018 version of KRS 457.050 provided that:

> (1) A power of attorney must be signed in the presence of two (2) disinterested witnesses by the principal or in the principal's conscious presence by another individual directed by the principal to sign the principal's name on the power of attorney. If signed in the principal's conscious presence by another individual, the reason for this method of signing shall be stated in the power of attorney.

(2) A signature on a power of attorney is presumed to be genuine if the principal acknowledges the signature before a notary public or other individual authorized by law to take acknowledgements.

In *Wiley*, a case with facts largely indistinguishable from the ones here, the Kentucky Supreme Court considered the applicability of the 2018 version of KRS 457.050 to a POA signed in April 2019. 694 S.W.3d at 325–26. There, Charlotte Blair attempted to execute a POA in April 2019 appointing her daughter, Annette Wiley, as her attorney-in-fact. *Id.* at 324. The POA was notarized, but not signed by two witnesses, despite having an entry line for those signatures. *Id.* In December 2019, Blair was admitted to a nursing home, and Wiley signed an agreement providing that claims arising from Blair's time in the facility were to be resolved through arbitration. *Id.* Upon Blair's death in 2020, Wiley sued the nursing home, asserting claims for negligence and wrongful death, among others. *Id.* The nursing home, in turn, argued that the claims were subject to the arbitration agreement and moved to compel arbitration. *Id.* at 325.

The Kentucky Supreme Court, observing that "[n]o party disputes that POA failed to be signed in the presence of two disinterested witnesses," first held that the POA was invalid at execution under the 2018 KRS. *Id.* at 326. The court then held that the 2020 amendments to KRS 457, which eliminated the disinterested witness requirement, did not apply retroactively to make the alleged POA valid. *Id.* at 328–29. In so holding, the court first explained that "[t]he language of the statute is clear and unambiguous. No express declaration of retroactivity exists in KRS 457.050." *Id.* at 327. The court then addressed the nursing home's argument that the "broader statutory scheme" of KRS 457 created ambiguity as to the retroactivity of KRS 457.050. *Id.* Specifically, the court looked to KRS 457.060, which remains unchanged after the 2020 amendments and states that "[a] power of attorney executed in this state on or after July 14, 2018 is valid if its execution complies with KRS 457.050." *Id.* Because the date in this provision was

6

not changed, the court was "unable to discern definitively" whether the legislature intended the provision to refer to the 2018 or 2020 version of KRS 457.050. *Id.* Because of this ambiguity, the court looked beyond the plain text of the statute, but found a "lack of evidence" such that the court could not be "absolutely certain that the legislature intended KRS 457.060(1) to have retroactive application to make the alleged POA valid." *Id.* at 328. Last, the court addressed the nursing home's argument that the 2020 amendment to KRS 457.050(1) was made retroactive by the 2020 version of KRS 457.460, which is titled "[e]ffect on existing powers of attorney." *Id.* at 238–29. The court attempted to reconcile KRS 457.460(1), which states that "[t]his chapter applies to a power of attorney created before, on, or after July 15, 2020," with KRS 457.460(4), which states that "[a]n act done before July 15, 2020, is not affected by this chapter." *Id.* The court focused on the provision's reference to "*existing* powers of attorney," and ultimately concluded that KRS 457.460 could not retroactively save the POA because the POA was not in existence at the time the 2020 amendment was enacted. *Id.* at 329 (emphasis added). That is, because "Blair, the principal, died before the passage of the 2020 amendment to KRS 4570.460," the alleged POA ceased to exist by the time the 2020 amendment took effect. *Id.*

Just as the Kentucky Supreme Court did in *Wiley*, this Court must first address whether the purported POA was invalid at the time of execution. If the POA was valid under the 2018 version of KRS 457.050, there is no need for the Court to address whether the 2020 amendment applies retroactively to save the POA. Rowan argues that the POA was invalid because it was not signed by two disinterested witnesses, while Highlands Nursing argues that it was signed in the presence of the notary and the attorney who prepared the POA—both of whom signed the POA. [DE 6-1 at 66; DE 7 at 88; DE 1-3 at 47]. Highlands Nursing thus distinguishes this case from *Wiley*, where the parties agreed that the POA was not signed in the presence of two disinterested witnesses. [DE

7

7 at 89]. In considering these arguments, the Court is mindful of the standard it must abide by at this stage of proceedings. Because the Court is considering a motion to dismiss, it must construe the complaint liberally and "draw all reasonable inferences" in Highlands Nursing's favor. *See Bassett*, 528 at 430. Only if Highlands Nursing has failed to plausibly allege the existence of a valid POA should the Court grant the motion to dismiss on the ground that Rowan lacked authority to enter into the arbitration agreement.[1]

For several reasons, the Court cannot conclude at this stage of the proceedings that the POA failed to comply with the disinterested witness requirement of KRS 457.050. First, it is not evident from either the complaint or the POA itself that it was not signed in the presence of two disinterested witnesses. The complaint alleges the existence of a valid POA, [DE 1 at 4], and the attached POA is silent as to the presence of witnesses. [DE 1-3 at 47]. The 2018 version of KRS 457.050 did not require that the disinterested witnesses sign the POA—just that the POA be signed "in the presence of" two disinterested witnesses. Upon review of the POA, it is not apparent that it failed to meet that requirement.

Second, assuming the POA was signed in the presence of the preparing attorney and the notary,[2] it is possible that those parties could be considered "disinterested witnesses" such that the statute was satisfied. KRS 457.050 does not define "disinterested witness," and Rowan cites to no Kentucky cases that stand for the uncompromising proposition that preparing attorneys and

---

[1] This procedural posture is different from other similar cases filed in federal court, where the plaintiff filed a motion to compel arbitration. *See, e.g.*, *GGNSC Louisville Hillcreek, LLC v. Watkins*, No. 3:15-CV-902-DJH, 2016 WL 815295, at *6 (W.D. Ky. Feb. 29, 2016); *Brandenburg Health Facilities, LP v. Mattingly*, No. 3:15-CV-833-DJH, 2016 WL 3448733, at *1 (W.D. Ky. June 20, 2016). Because the Court is considering only a motion to dismiss, it only considers whether Highlands Nursing has stated a plausible claim for relief, not whether to compel arbitration at this time.

[2] The Court cannot determine from the POA whether May signed it in the presence of the attorney, Jan R. Waddell, Sr. The document provides that "[t]his instrument [is] prepared by: Jan R. Waddell Sr.," and includes Waddell's signature, but this is not necessarily proof that May signed the POA in Waddell's presence. [DE 1-3 at 47].

notaries can never serve as disinterested witnesses. Rather, she cites to Black's Law Dictionary, which defines a "disinterested witness" as a witness "who has no private interest in the matter at issue." [DE 8 at 133]; *see also Disinterested Witness*, *Black's Law Dictionary* (12th ed. 2024). She also cites to a 1921 Kentucky Supreme Court case, which noted that

> the interest which would disqualify [an] attorney should grow out of the fact that he was financially interest in the outcome, or that he was related to the parties, or that he was so biased because of enmity against the accused, or some other equally substantial reason, from giving good faith advice.

*Kroger Grocery & Baking Co. v. Hamlin*, 235 S.W. 4, 7 (Ky. 1921). Even relying on these definitions, there is simply not sufficient information in the pleadings and attachments from which the Court can conclude that the preparing attorney is indisputably "interested." That is, there are no facts as to the attorney's financial interest in the POA or his representation of May that would allow the Court to draw inferences about his bias or pecuniary interest in the matter. And the Court is not aware of any basis in Kentucky law for presuming that an attorney is interested simply because he prepared the document being signed.

The same is true for notaries acting as witnesses. Rowan, citing several out-of-state cases, argues that a notary who signs a document in his official capacity rather than his personal capacity as a witness cannot be considered a "disinterested witness." [DE 8 at 134]. She offers no Kentucky cases that support this position, however. To the contrary, Kentucky courts seem to have taken the opposite position in the context of wills. For instance, in *Smith v. Neikirk*, the Kentucky Court of Appeals considered whether a notary could be considered a witness to a will when she had "witnessed the testator sign the will, then signed the will as a notary, and returned to will to him." 548 S.W.2d 156, 158 (Ky. Ct. App. 1977). The question was whether the notary's designation of her official capacity in signing the will disqualified her as a witness to the will. *Id.* at 157. The court held that the notary was a witness to the will and "[t]he fact that she signed as a notary [was]

9

merely surplusage." *Id.* at 158. Years later, the Kentucky Court of Appeals, discussing *Neikirk*, endorses its conclusion that the notary acted as a witness despite signing as a notary. *See Smith v. Smith*, 348 S.W.3d 63, 66 (Ky. Ct. App. 2011) (noting that "the will in question [in *Neikirk*] had three witnesses," including the notary). The Court is not aware of any binding caselaw that supports Rowan's position that a notary cannot serve as a both a notary and a witness, and there is no evidence that the notary in this case was otherwise "interested."

Accordingly, drawing all reasonable inferences in favor of Highlands Nursing, it does not "appear[] beyond doubt that [Highlands Nursing] can prove no set of facts in support of the claims that would entitle [it] to relief." *Zaluski*, 527 F.3d at 570. In other words, it remains plausible that the POA was signed in the presence of two disinterested witnesses, and therefore that the POA was valid under the 2018 version of KRS 457.050. Because it remains plausible that the POA was valid when executed in 2019, the Court need not determine at this juncture whether the 2020 amendment applies retroactively to save an invalid POA.[3] Because Highlands Nursing has plausibly alleged the existence of a POA that gave Rowan the ability to enter into an arbitration agreement, dismissal on the basis of an invalid POA is not proper.

B. Applicability of Arbitration Agreement to Wrongful Death Claim

Rowan argues that, even if the POA and arbitration agreement are valid, the arbitration agreement is inapplicable to her wrongful death claim in the state court action because Kentucky law prohibits a decedent from binding her beneficiaries to arbitrate their wrongful death claims. [DE 6-1 at 70]. Highlands Nursing agrees that "it is generally true that a Kentucky citizen is not able to bind his or her wrongful death beneficiaries to the terms of a pre-dispute arbitration agreement." [DE 7 at 91]. Highlands Nursing nevertheless argues that (1) the Court should adopt

---

[3] The Court does not affirmatively hold that the POA was valid when executed in 2019, but merely that there is insufficient information to find the POA invalid.

10

the reasoning of several federal district courts in Kentucky that have found that wrongful death beneficiaries were bound by arbitration agreements that they themselves were parties to, and (2) it would be premature at this stage to dismiss the complaint when Rowan has not identified whether she qualifies as a wrongful death beneficiary. [DE 7 at 92].

In *Ping v. Beverly Enterprises, Inc.*, the Kentucky Supreme Court held that a decedent "cannot bind his or her beneficiaries to arbitrate their wrongful death claim." 376 S.W.3d 581, 599 (Ky. 2012). This is because wrongful death claims are "not derived through or on behalf of the [decedent], but accrue[] separately to the wrongful death beneficiaries and [are] meant to compensate [the beneficiaries] for their own pecuniary loss[.]" *Id.* In other words, wrongful death actions—those brought by the estate on behalf of statutory beneficiaries to recover for their own loss—are distinct from survival actions—those personal injury claims brought by the estate on its own behalf to recover for loss the decedent suffered prior to death. *Id.* at 597–98. Because wrongful death claims are independent from personal injury claims, a decedent's agreement to arbitrate her personal injury claims "does not bind the wrongful death claimants to arbitration, because they were not parties to the agreement and do not derive their claim from a party." *Id.* at 598; *see also Preferred Care, Inc. v. Roberts*, No. CV 5:16-203-KKC, 2017 WL 424868, at *6 (E.D. Ky. Jan. 31, 2017).

Highlands Nursing contends that, while it is "generally true" that Kentucky law prohibits an individual from binding her wrongful death beneficiaries to arbitration, "Federal District Courts in Kentucky have on multiple occasions found that wrongful death claims should still be submitted to binding arbitration." [DE 7 at 92]. The cases Highlands Nursing cites to, however, are distinguishable because they involve contracts in which the wrongful death beneficiaries themselves were parties to the arbitration agreements and therefore agreed to arbitrate their *own*

11

claims. That is, the language of the arbitration agreements in those cases clearly made the beneficiary a party to the contract such that the beneficiary bound himself to the agreement. For instance, in *BLC Lexington SNF, LLC v. Oatis*, Clementine Garred ("Garred") was admitted to a nursing home and, upon her admittance, signed an arbitration agreement. No. CV 5:19-284-DCR, 2019 WL 6221006, at *1 (E.D. Ky. Nov. 20, 2019). Garred was later temporarily discharged and readmitted several times, and each time, one of Garred's daughters, Tavonne or Kendra Oatis, signed the same arbitration agreement as a representative of Garred. *Id.* at *2. Upon Garred's death, Kendra Oatis brought a wrongful death action. *Id.* Examining the language of the contracts, the court found that, although she was "acting on behalf of her mother," Kendra was *herself* a party to the contract. *Id.* at *14. The court pointed to the "parties" section of the contract, which provided that the representative was a party to the contract, and to the arbitration provision, which specifically stated that "the parties" agree to arbitrate their claims. *Id.* The court therefore held that the wrongful death beneficiary had agreed to arbitration and compelled arbitration of the wrongful death claim. *Id.* at *15; *see also BLC Lexington SNF, LLC v. Petersen*, No. 5:19-CV-00465-GFVT, 2020 WL 3130292, at *10 (E.D. Ky. June 12, 2020) (finding that wrongful death beneficiary was himself a party to the arbitration agreement and ordering the parties to arbitrate the wrongful death claim); *Golden Gate Nat'l Senior Care, LLC v. Jones*, No. CV 16-49-HRW, 2016 WL 4744151, at *7 (E.D. Ky. Sept. 12, 2016) (same).

In cases where the wrongful death beneficiaries are not parties to the arbitration agreement, however, courts regularly deny motions to compel arbitration of wrongful death claims. *See, e.g.*, *Richmond Health Facilities—Madison, L.P. v. Shearer*, No. 5: 17-255-KKC, 2017 WL 3273381, at *6 (E.D. Ky. Aug. 1, 2017); *Paducah Health Facilities, L.P. v. Newberry*, No. 2013-CA-1980-

12

MR, 2015 WL 6780406, at *4 (Ky. Ct. App. Nov. 6, 2015). Here, it is clear from the arbitration agreement that Rowan did not bind herself to the arbitration provision. The agreement states that

> Highlands Nursing and Rehabilitation, LLC (hereinafter the "Facility" as defined below) *and Joann May* (hereinafter the "Resident" as defined below) agree that any legal dispute, controversy, demand or claim . . . arising out of, or relating in any way to Resident's admission to Facility . . . shall be resolved exclusively by binding arbitration.

[DE 1-1 at 9 (emphasis added)]. The agreement then goes on to bind only "the Resident" to arbitration for claims arising out of the Resident's stay at the nursing home. [*Id.*]. The agreement says nothing about binding May's representative or other parties to the agreement. While Rowan signed the agreement as May's representative, she did so on May's behalf, not on behalf of herself or on behalf of the estate. [*Id.* at 12]. The language of this agreement is distinguishable from the language of the agreement in *Oatis* or *Peterson*, where the beneficiary was directly named as a party to the agreement, and where the agreement purported to bind all "parties" to arbitration. *See Oatis*, 2019 WL 6221006, at *14; *Peterson*, 2020 WL 3130292 at *10. Because Rowan did not bind herself or the estate to arbitration, and because May could not herself bind the wrongful death beneficiaries to arbitration, the wrongful death claim is not subject to the arbitration agreement.

Highlands Nursing also argues that it would be premature to dismiss to the complaint with respect to the wrongful death claim because Rowan has not identified whether she is a wrongful death beneficiary or "who exactly the wrongful death beneficiaries may be[.]" [DE 7 at 92]. For purposes of this Court's decision as to the arbitrability of a wrongful death claim, however, this argument is irrelevant. As explained above, the terms of the arbitration agreement make clear that no wrongful death beneficiaries have bound themselves to arbitrate their claims. Accordingly, the wrongful death claims are not subject to arbitration, regardless of who the beneficiaries are. If Highlands Nursing believes that Rowan, as administratrix of May's estate, has failed to identify

13

beneficiaries and therefore failed to state a claim for wrongful death, it may make that argument in the state court action.

The Court therefore grants Rowan's motion to dismiss to the extent that Highlands Nursing seeks arbitration of the state law wrongful death claim.

C. Scope of Arbitration Agreement

Finally, Rowan argues that even if the POA and arbitration agreement are valid, the claims brought in the state court complaint do not fall within the scope of the arbitration agreement. [DE 6-1 at 71]. She maintains that the arbitration agreement "specifically excludes the types of claims at issue in this case," and points to the following language of the agreement:

> This agreement to arbitrate includes, but is not limited to, any claim for refund, or violations of any rights granted to Resident by law or by this Agreement, and also includes, but is not limited to, *claims of breach of contract (except collections of unpaid monies owed for services provided or rendered,, fraud or misrepresentation, negligence, gross negligence, malpractice, or any other claim based on any departure from accepted standards of medical, nursing, health care or safety*, whether sounding in tort, contract, consumer trade practices, product liability or any other cause of action not herein named, but that could be brought under applicable state or federal civil laws.

[DE 6-1 at 72; DE 1-1 at 10 (emphasis added)]. She argues that the agreement therefore "specifically excepted from its terms negligence, gross negligence, malpractice, or any other claim based on any departure from accepted standards of medical, nursing, health care or safety," so all of the state law claims are excepted. [DE 6-1 at 72]. In response, Highlands Nursing argues that this reading conflicts with the remainder of the arbitration agreement and that, under the terms of the agreement, any disputes regarding the applicability of the agreement to certain claims must themselves be resolved by the arbitrator. [DE 7 at 93–94].

In addition to agreeing to arbitrate the merits of a dispute, parties to an arbitration agreement may also agree to arbitrate "'gateway' questions of 'arbitrability,' such as whether the

parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (citations omitted). "Such an agreement, commonly known as a delegation provision, requires '"clear and unmistakable" evidence that the parties agreed to have an arbitrator decide' arbitrability." *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021) (quoting *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020)).  The Sixth Circuit has held that incorporation of or reference to the American Arbitration Association ("AAA") rules constitutes "clear and unmistakable evidence" that there was an agreement to delegate issues of arbitrability, as those rules "clearly empower an arbitrator to decide questions of 'arbitrability.'" *Blanton*, 962 F.3d at 845–46.

Here, the arbitration agreement references the AAA and states that "[t]he arbitrator shall resolve all gateway disputes regarding the validity, enforceability, and interpretation of this Agreement," indicating that the parties intended to delegate disputes regarding the interpretation of the agreement to an arbitrator. This constitutes a "clear and unmistakable" delegation as understood by the Sixth Circuit. As a result, assuming the arbitration agreement is valid, the arbitrator—not the Court—must interpret the agreement's language regarding which claims are subject to arbitration.[4]

Highlands Nursing has therefore stated a plausible claim for relief as to its actions to compel arbitration and enjoin Rowan from pursuing the state court action, except with respect to the wrongful death claim. Accordingly, the Court will grant Rowan's motion to dismiss with respect to the wrongful death claim and deny the motion to dismiss on all other grounds. At this

---

[4] In reply, Rowan makes no attempt to dispute Highlands Nursing's argument that interpretation of the arbitration agreement has been delegated to an arbitrator. Rather, she focuses only on challenging Highlands Nursing's interpretation of the agreement's language defining its scope. Because interpretation is delegated to the arbitrator, the Court does not address that argument.

15

juncture, the Court does not opine as to whether arbitration must be compelled, as Highlands Nursing has not filed any motion to that effect.

### IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** Rowan's motion to dismiss [DE 6] with respect to Highlands Nursing's attempt to arbitrate the wrongful death claim, and **DENIES** the motion to dismiss on all other grounds.  The Court will issue a separate order referring this matter to the Magistrate Judge for a Rule 16 conference.

Rebecca Grady Jennings, District Judge
United States District Court

March 18, 2026